UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ARMANDO ROJAS DIAZ, | ) No. CV 05-6989-VBK |
| Plaintiff, | ) MEMORANDUM OPINION AND ORDER |
| v. | ) (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income (SSI) benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that this case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter Judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the required Joint Stipulation (JS), and the Commissioner has filed the certified administrative record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed.

Plaintiff first asserts that the Administrative Law Judge ("ALJ") did not properly consider his mental impairments. This is a complex issue, involving application of case law, regulation, and statute.

ALJ DECISION

The evidence in the AR concerning mental impairment consists of the diagnostic reports of a number of treating and examining sources. Dr. Vicary completed a mental disorder questionnaire in October 2003 which indicated that he treated Plaintiff between April and October of 2003 on an "as needed" basis. (AR 200-204.) Dr. Vicary's conclusions on the questionnaire were cited by the ALJ in the decision. In the portion of the questionnaire describing "current level of functioning,", and in particular referencing "concentration and task completion,", Dr. Vicary wrote, "unable to focus and complete tasks cannot focus on tasks with adequate recall or completion." (AR 202.) In the subsection entitled "adaptation to work or work-like situations," Dr. Vicary wrote, "unable to work in his customary position or any employment position at this time." (AR 203.)

Clinical psychologist Joseph R. Lopez, PhD. completed a questionnaire on October 6, 2003, which reflected that he first examined Plaintiff on March 3, 2003, last examined him on September 30, 2003, and saw him bi-weekly. (AR 207-211.) Dr. Lopez submitted a number of reports which are contained in the record (AR 265-280.) In the questionnaire, under the subheading "concentration and task completion,", Dr. Lopez wrote, "at times forgetful and impaired concentration for tasks at hand." Under the subheading "adaption to work or work-like situations," Dr. Lopez wrote, "due to impaired concentration and diabetes may not be able to adapt to rigid work

1  schedule." (AR 210.) In an April 7, 2003 report, Dr. Lopez diagnosed
2  major depressive disorder, single episode, moderate, at Axis I. A
3  guarded prognosis was also noted. (AR 266.) During the treatment
4  period of May through July 2003, Dr. Lopez reported that Plaintiff's
5  condition had improved, but more slowly than expected. No change was
6  reported in his current treatment, which required weekly individual
7  psychotherapy. (AR 275.) In a report dated November 25, 2003, Dr.
8  Lopez again diagnosed major depressive disorder on Axis I. (AR 279.)
9      Finally, the ALJ had the benefit of a psychological evaluation
10 (CE) performed on November 24, 2003, at the request of the Department
11 of Social Services, by Dr. Brawer, a clinical psychologist. (AR 223-
12 230.) On Axis I, Dr. Brawer diagnosed depressive disorder, secondary
13 to general medical condition. (AR 228.) Based on test results and
14 behavior presentation, Dr. Brawer assessed that Plaintiff would be
15 able to "learn a simple, repeated task and could perform some
16 detailed, varied and complex nonverbal tasks. His ability to sustain
17 attention and concentration for extended periods of time may be mildly
18 limited." (AR 229.)
19     Relying upon all of this information, including the report of a
20 state agency physician, the ALJ assessed that Plaintiff has a
21 "moderate limitation" in his ability to maintain concentration,
22 persistence or pace. He assessed residual functional capacity, which
23 incorporated nonexertional, mental limitations by determining that
24 Plaintiff could perform simple routine tasks. (AR 22.) Utilizing the
25 "grids" as a framework for decision making, the ALJ assessed that
26 Plaintiff's capacity for light work is substantially intact and has
27 ///
28 ///

not been compromised by any nonexertional limitations. (AR 25, finding 13)[1]

ANALYSIS

In the evaluation of mental impairments, 20 CFR Section 404.1520a(c)(3) and Section 416.920a(c)(3), require consideration of activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. This analysis, generally done in a psychiatric review technique form (PRTF), is utilized at step three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the impairment is found to be nonsevere at step two. SSR 85-16 provides the following, in pertinent part:

> "However, in determining the impact of a mental disorder on an individual's capacities, essentially the same impairment-related medical and nonmedical information is considered to determine whether the mental disorder meets listing severity as is considered to determine whether the mental impairment is of lesser severity, yet diminishes the individual's RFC."

Following the district court's decision in <u>Bankston v. Commissioner of Social Security</u>, 127 F.Supp. 2nd 820 (E.D. Mich. 2000), the regulations pertaining to assessment of these factors

---

[1] The ALJ did not utilize a Vocational Expert (VE) at the hearing. (AR 34-50.)

4

(which are referred to as the "B criteria") were changed.  Previously, a five category scale (never, seldom, often, frequent, and constant) was utilized on the PRTF for the first three of these four functional areas.  The September 2000 amendments to the regulations no longer require the ALJ to complete and attach a PRTF.  Instead, the ALJ, in the decision,

> "[m]ust then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section . . ." (20 CFR Section 404.1520a(b)(2).

The regulation now provides for an assessment under the following five point scale: none, mild, moderate, marked and extreme.  (See 20 CFR Sections 404.1520a(c)(4) and 416.920a(c)(4).)  Although the regulation as amended seemingly omits the frequency factor, this would be an incorrect conclusion.  It is fundamental, of course, that the Commissioner's evaluation of disability (see 20 CFR Section 404.1520) is premised upon whether or not a claimant is capable of meeting the mental and physical demands of full-time employment. SSR 85-16, for example, provides that the determination of mental RFC involves consideration of evidence which includes,

> "Ability to sustain activities, interest, and relate to others over a period of time.  The frequency, appropriateness and independence of the activities must also be considered." (emphasis in original)

///
///

Even in a case in which a VE is utilized,[2] and the claimant has "moderate" deficiencies in concentration, persistence or pace, these deficiencies must be included in the hypothetical question. A mere reference to an ability to perform "simple jobs" or "unskilled sedentary work" in a hypothetical is, without more, insufficient to describe the functional limitations resulting from concentration deficiencies. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1986). While the Commissioner argues that Newton is not applicable to this case, Plaintiff correctly points to the Ninth Circuit's reasoning in Thomas v. Barnhart, 278 F.3d 947, 956-957 (9th Cir. 2002). There, the VE was present during testimony of a medical expert ("ME") at the hearing. The ME had testified that Plaintiff had moderate difficulties with concentration, persistence or pace, which occurred often. (278 F.3d at 953) The Circuit held that Plaintiff's complaint that all of her functional limitations were not properly incorporated in the hypothetical to the VE, because that hypothetical did not specifically address the frequency of her deficiencies of concentration, persistence or pace, was not well taken because the VE had heard the testimony of the ME, which incorporated these deficiencies, and the hypothetical question instructed the VE to credit the ME's opinion. (See 278 F.3d at 956)

The vice in the ALJ's decision in this case is that by assessing an RFC at step four which allowed Plaintiff to perform simple, routine tasks, the ALJ ignored the frequency component: how often Plaintiff cannot keep concentrated or focused, which is integral to determining Plaintiff's ability to function in a work situation. This is

---

[2] As the Court will discuss, the ALJ erred in not using a VE in this case.

different than the level of sophistication or intensity of the work that can be done with this concentration limitation. The requirement to adequately assess frequency has been noted in numerous case decisions. See, for example, Ramirez v. Barnhart, 372 F.3d 546, 554 (3rd Cir. 2004); Walker v. Barnhart, 258 F.Supp 2d 293 (E.D. Mich. 2003); Bielat v. Commissioner, 267 F.Supp. 2d 698 (E.D. Mich. 2003). The importance of addressing the factor of frequency was well stated by the district court in its opinion in McGuire v. Apfel, 1999 WL426035 at *15 (D. Ore. 1999):

> "In this case, the Commissioner argues that the ALJ sufficiently described McGuire's limitation regarding concentration, persistence, or pace by asking the VE to consider a person that is "restricted to simple work, nothing complex and has below average to poor reading skills. . . . In this case, the ALJ completed a Psychiatric Review Technique Form noting that McGuire "often" has deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. Tr. 25. This is a specific limitation from which the ALJ found McGuire suffers. However, in his hypothetical to the VE, the ALJ did not mention this limitation. By stating that the person requires simple work and has below average reading skills, the ALJ was referring to a person who could perform only routine, simple tasks. That is a far cry from a person who cannot concentrate at work, works at a

            slow pace, and cannot complete projects in a
timely manner.  It is the inability to work at a
normal pace resulting in untimely completion of
tasks which causes a person to be disabled from
working.  Because the ALJ's hypothetical does not
mention any problems regarding completion of tasks
on time or the pace with which the person would
work, this court cannot equate the ALJ's statement
with the ALJ's express determination of McGuire's
limitation." (Emphasis added)

    In this case, the conclusions of Drs. Vicary and Lopez, which the ALJ relied upon, reference plaintiff's inability to function in a job setting on a sustained basis.

    The other error committed by the ALJ was his failure to utilize the assistance of a VE to evaluate Plaintiff's mental, nonexertional deficiencies.  Although the Commissioner argues that because Plaintiff had no significant nonexertional restrictions, it was appropriate to utilize the grids as a framework for decision making, Plaintiff's nonexertional mental limitations are in and of themselves enough to limit his range of work.  The testimony of a VE is specifically required.  See Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

    The Court will only briefly address Plaintiff's second issue, that the ALJ improperly rejected the opinion of treating physician Dr. Sperling, who stated that Plaintiff was temporarily totally disabled.  First, the Court notes that findings of disability are not made by physicians in the social security context, but by the Commissioner.  In any event, the ALJ's consideration of Dr. Sperling's opinion in

light of the reports of the examining physicians is supported by an analysis containing specific, legitimate reasons, as required. See Morgan v. Commissioner, 169 F.2d 595, 600 (9th Cir. 1999).

This matter will be remanded for further hearing consistent with this memorandum decision. Accordingly, the decision of the Commissioner is reversed.

**IT IS SO ORDERED.**

DATED: October 5, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE